LUCIEN P. VAN NORMAN *vs.* NORTHWESTERN MUTUAL LIFE INS. CO.

Argued June 23, 1892.    Decided Aug. 17, 1892.

Life Insurance Policy Construed.

   An endowment life insurance policy for $1,000 was issued by the defendant, April 16, 1869, to mature in 22 years, unless the assured should die before that time.    The premium was payable annually for the period of 10 years, partly in cash, and partly in premium notes of the assured bearing interest.    The policy provided that, if default should be made by the assured in the payment of any premium, the defendant would pay (at the maturity of the policy) as many tenths of the sum originally insured as there should have been complete annual premiums paid at the time of such default.    "But, in order to secure such proportion of the policy, all premium notes must be taken up, or the interest thereon be paid annually in cash, on the date of the annual maturity of the premium, un-

til the notes are canceled by returns of the surplus, or the whole policy will be forfeited, unless one or more annual payments have been made in full by cash payment or by the application of the dividend." *Held*, construing the policy, that, as to any notes outstanding when the assured makes default in respect to the annual premium, he must continue to pay the interest *in cash*, (until the principal is extinguished by the application of dividends,) as a *condition* of maintaining the right to receive a corresponding number of "*tenths*" of the sum insured.

### Payment of Premiums—Nonforfeitable Endowment.

But the complete payment of the cash premium for any year or years, and the payment of the notes given for such years, secures a nonforfeitable endowment of a corresponding number of "tenths" of the policy.

### Application of Dividends.

A dividend being applicable towards the payment of a note at the same time that the interest on the note fell due, the default of the assured to pay the interest does not discharge the defendant from the duty to apply the dividend, if such application would pay off the note, and so prevent a *forfeiture* of the policy.

### De Minimis non Curat Lex.

The default of the assured in the payment of interest, amounting to four cents, is too trifling to be noticed.

### Endowment of One-Tenth of Policy.

A nonforfeitable endowment of one-tenth of the policy having been secured, that may be recovered at maturity, less whatever may remain unpaid of the outstanding notes after applying dividends to extinguish the same, (the policy so providing.)

Appeal by defendant, The Northwestern Mutual Life Insurance Company, from a judgment of the District Court of Hennepin County, *Smith*, J., entered March 4, 1892, for the sum of $407.46.

April 16, 1869, the defendant, The Northwestern Mutual Life Insurance Company, issued to one Hermann Bunse a policy of life insurance. The material parts of the policy are stated in the opinion.

Bunse lived until after the policy matured. In June, 1891, it was assigned to the plaintiff. The trial court held that on April 16, 1875, when the insured defaulted in payment of interest on premium notes, the policy had earned a dividend on its business of $8.02, which the insured was entitled to, and that it should be applied first to the payment of the interest due that day on all the four premium notes, and

the remainder towards the payment of the principal. That $400 of the policy was not forfeited by the default of the assured in the payment of the interest on the premium notes in cash. The court also held that the assured was entitled to dividends each subsequent year, which should be applied in like manner on April 16th of each year, first, to pay the interest on the premium notes and the remainder upon the principal. The trial court also held that the endowment of four-tenths of the policy, or $400, had been saved from forfeiture each year by the application of the dividends to pay the interest on the notes, and that plaintiff was entitled to recover from defendant $400, less the amount of the premium notes remaining unpaid. From a judgment entered pursuant to such decision, defendant appeals.

*Lawler, Durment & Bigelow,* for appellant.

The appellant claims the following to be the proper construction and true meaning of the policy :

1. A failure to pay the cash part of any premium or to give a note for the note part, when the same becomes due, forfeits not the entire policy, but all of the policy except so many tenths as there have been made annual payments of premium by cash and note.

2. The failure to pay in cash the *interest* on any premium note at the time when the interest becomes due, forfeits the *whole* policy, except as stated below.

3. If at the time when default is made in the payment of interest on premium notes, any premium note shall have been paid in cash and taken up, or shall have been cancelled by returns of the surplus, then so many tenths of the policy are saved as premium notes have been paid in cash and taken up, or cancelled by the returns of the surplus.

Such is the natural and reasonable construction of the language of the policy, and such is the construction placed upon the policy by the parties to it. The two receipts in evidence given after the failure of the insured to pay the premium show this. They are receipts for interest on the notes, and recite that "this payment binds four hundred dollars of said policy for one year from date,

six-tenths having been cancelled for nonpayment of premium after four years."

This construction gives effect to every provision of the policy, and makes each provision consistent with every other.

The defendant is a mutual company and the earnings belong to the policy holders. For that reason, the courts do not hesitate to enforce a forfeiture. They hold the payment of the interest at the stipulated time to be of the essence of the contract. *Knickerbocker Life Ins. Co.* v. *Dietz*, 52 Md. 16; *Fowler* v. *Metropolitan Life Ins. Co.*, 116 N. Y. 389; *New York Life Ins. Co.* v. *Statham*, 93 U. S. 24; *Russum* v. *St. Louis Mut. Life Ins. Co.*, 5 Bigelow, Ins. Rep. 243; *Patch* v. *Phoenix Mut. Ins. Co.*, 44 Vt. 481; *Ewald* v. *Northwestern Mut. Life Ins. Co.*, 60 Wis. 431; *Symonds* v. *Northwestern Mut. Life Ins. Co.*, 23 Minn. 491. The *Ewald Case* construes a policy substantially identical with the one before the court, and the construction given to the policy by the Wisconsin court in that case is the one appellant contends for in this.

At the time default was made in the payment of the interest on the premium notes, no premium note had been paid, either in cash or by return of the surplus. There were four returns of surplus or dividends, amounting to $25.59, applied to the payment of the first premium note of $26.10. Default was made in the payment of interest April 16, 1875; the next dividend was due *after April 16, 1875;* the policy became forfeited on April 16, 1875, hence the next dividend never became due.

The dividends could not be applied to the payment of interest. This is directly contrary to the terms of the policy. *Anderson* v. *St. Louis Mut. Life Ins. Co.*, 5 Bigelow, Ins. Rep. 528. This was done by the court below, and is the only way in which the decision can be sustained.

The insured was only entitled to dividends so long as he paid his interest. *Northwestern Mut. Life Ins. Co.* v. *Bonner*, 36 Ohio St. 67.

*Charles E. Dyer,* also for appellant.

The true construction of the policy is this: If the assured defaults in the payment of a premium after having paid one or more

complete annual premiums, and if he shall then take up all the premium notes, or if he shall annually pay in cash the interest on the notes, until the notes are all cancelled by returns of the surplus, then he will be entitled to as many tenth parts of the original sum insured, as there shall have been complete annual premiums paid at the time of default in the payment of a premium: provided, however, that if he shall have made one, two, three or four annual payments, in full *by cash or by application of the dividends,* then he will be entitled to one, two, three or four tenths, as the case may be, of the original sum insured.

The court below, in order to reach the conclusion that four-tenths of the policy were saved from forfeiture and entitled to draw dividends to 1891, applied the dividends to the payment of interest on the notes. No language in the policy warrants this. The contract emphatically declares that interest on the notes must be paid in cash by the insured. If dividends are earned, they are applied to pay the principal of the notes, and no other application of them can be made. In none of the authorities that may appear to support respondent's position, is there any requirement in the policy that the interest must be paid annually in cash in order to secure a proportion of the policy. *Symonds* v. *Northwestern Mut. Life Ins. Co.,* 23 Minn. 491; *Ohde* v. *Northwestern Mut. Life Ins. Co.,* 40 Iowa, 357; *Northwestern Mut. Life Ins. Co.* v. *Bonner,* 36 Ohio St. 52; *Northwestern Mut. Life Ins. Co.* v. *Little,* 56 Ind. 504; *Fithian* v. *Northwestern Mut. Life Ins. Co.,* 4 Mo. App. 386. In *Hull* v. *Northwestern Mut. Life Ins. Co.,* 39 Wis. 397, the policy expressly provided that dividends should apply to pay interest on premium notes. The case of *Ewald* v. *Northwestern Mut. Life Ins. Co.,* 60 Wis. 431, is positive and direct authority supporting our contention in the case at bar.

*Samuel L. Baker,* for respondent.

The respondent contends that the following is the proper construction of the policy:

1. The forfeiture for nonpayment of premium is to be held not a forfeiture for the tenths to which, by the terms of the policy, the insured is entitled by reason of payment of complete annual premiums.

2. The giving of a note for $26.21, and the payment of $40.10 in cash, constitutes a complete annual premium, and each such note given and cash paid entitles the assured to a nonforfeiture endowment of a tenth part of the original sum insured.

3. The failure to pay, in cash, the interest on any premium note, does not forfeit the policy.   It is only the failure to pay the annual premium that works a forfeiture.

4. If at the time default is made in the payment of the annual premium, one or more premium notes shall have been paid in cash, or cancelled by dividends, *then* so many tenth parts of the policy are saved as there have been complete annual premiums paid at the time of such default.   *Hull* v. *Northwestern Mut. Life Ins. Co.*, 39 Wis. 397; *Symonds* v. *Northwestern Mut. Life Ins. Co.*, 23 Minn. 491; *Ohde* v. *Northwestern Mut. Life Ins. Co.*, 40 Iowa, 357; *Bonner* v. *Northwestern Mut. Life Ins. Co.*, 30 Ohio St. 51.

The insured made four complete annual payments without default. It follows that he is entitled to four-tenths of the policy, or $400, with dividends, less the four premium notes.

What is meant by a *complete annual premium?*   The policy says it consists of an annual premium note of $26.21, and annual cash premium of $40.10.

The several dividends from the earnings on the policy were payable on April 16th of each year, and it is sound law and the manifest duty of the company to so allow and credit the dividends as to prevent a forfeiture.   The dividends should be applied to pay the interest on the notes.   *Franklin Life Ins. Co.* v. *Wallace*, 93 Ind. 7; *Girard Life Ins. Co.* v. *Mutual Life Ins. Co.*, 97 Pa. St. 15; *Northwestern Mut. Life Ins. Co.* v. *Little*, 56 Ind. 504.

DICKINSON, J.   This is an action upon a ten-year endowment life insurance policy, the right of action upon which the plaintiff acquired by assignment.   The insurance was in the sum of $1,000, upon the life of one Bunse, to whom the policy was issued April 16, 1869. By its terms the amount of the insurance was payable twenty-two years thereafter, or upon the death of the assured, in case he should die within that period.   His death not having occurred, the policy

matured April 16, 1891.    The controversy is as to whether the obligation of the defendant to make any payment was terminated by the default of the assured to perform the conditions of the contract in respect to the payments required to be made by him.    There is no doubt as to the facts, but only as to the proper construction of the contract.

The consideration upon which the undertaking of the defendant was assumed is expressed in the policy to be "the annual premium in advance, consisting of an annual premium note of $26.21, (the interest upon which must be paid annually in cash at the date of maturity of the annual premium,) and of the annual cash premium of $40.10, to be paid at or before noon, on or before the 16th day of April in every year during the first ten years of the continuance of this policy."    The policy further provided as follows:

"At each distribution of the surplus after three years from the date hereof, a due proportion of such surplus on each and every year's business, during the continuance of this policy, will be returned to the said assured.

"And the said company further promises and agrees that, if default shall be made in the payment of any premium, it will pay, as above agreed, as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default.    But, in order to secure such proportion of the policy, all premium notes must be taken up, or the interest thereon be paid annually in cash, on the date of the annual maturity of the premium, until the notes are canceled by returns of the surplus, or the whole policy will be forfeited, unless one or more annual payments have been made in full by cash payment or by the application of the dividend.

"This policy is issued and accepted by the parties in interest on the following express conditions:    *    *    *    (3) If the said premiums or the interest upon any note given for premiums shall not be paid on or before the days above mentioned for the payment thereof,    *    *    *    then, and in every such case, the company shall not be liable for the payment of the whole sum assured, but only for

such part thereof as is expressly stipulated above, and the remainder shall cease and determine."

By the following tabular statement may most readily be shown the payments of premiums by the assured, including the giving of notes, the payment of interest on such notes, the time when such payments ceased by default of the assured, and the allowance of dividends by the defendant, which it applied on the note first given:

| Date. | Prem. Pd. in Cash. | Note Given. | Int. Pd. in Full on All Former Notes. | Dividend Applied | Being surplus arising from premiums paid in the years |
|---|---|---|---|---|---|
| Apl. 16, 1869............................. | $40 10 | $26 21 | | | |
| Apl. 16, 1870............................. | 40 10 | 26 21 | $1 83 | | |
| Apl. 16, 1871......    .... ............. | 40 10 | 26 21 | 3 67 | $ 3 30 | 1869 |
| Apl. 16, 1872............................. | 40 10 | 26 21 | 5 27 | 4 33 | 1870 |
| Apl. 16, 1873.. ......................... | default | default | 6 80 | 6 96 | 1871 |
| Apl. 16, 1874............. ............. | " | " | 6 32 | 11 00 | 1872 |
| | | | | $25 59 | |

It will be observed that, after having paid four annual premiums and given four notes, the assured neglected to make the fifth cash payment, due April 16, 1873, and to give the note which was to have been given at that time, but that he continued to pay the interest falling due annually on the four notes, previously given, until April 16, 1875. The interest which was due on that day was not paid, and no payments were ever afterwards made.

The failure of the assured to made the fifth annual payment of cash premium, and to give a fifth note, had the effect under the conditions of the policy to reduce the amount of the insurance to $400, four tenths of the original amount, and that is the extent of the recovery sought. It is not denied that the policy became and would have remained effectual as an insurance ·to that extent (subject to the outstanding notes) without further payments being made by the assured, *unless* he was required to continue to pay *in cash* the annually accruing interest on the notes already given, until they should be extinguished by the application of dividends.

Again, it will be observed from the above tabulated statement that in April, 1871, at the second anniversary of the giving of the policy,

the defendant allowed and credited on the first notes given the surplus or profits earned from the premium paid the first year; that like credits were allowed in each of the three succeeding years; and that the sum of all these dividends did not quite equal the principal of the first note on which they were applied. The defendant did not credit the assured with any dividend at the anniversary of the policy, in 1875, for the reason, as it seems from the evidence, that it regarded the policy as having been wholly forfeited or avoided at that date (April 16, 1875) by the neglect of the assured to pay *in cash* the interest then falling due on his notes. It is a fact that, if the dividend applicable to this policy (if not forfeited) had been allowed at that time, it would have been more than enough, with the dividends previously allowed, to have discharged the first note; and if that and subsequent dividends should have been allowed in payment of the interest as well as of the principal of such notes they would not only have kept the interest paid, but at the maturity of the policy (April, 1891) would have extinguished the principal of the notes, excepting the sum of $28.82, which balance should be deducted from the $400, then due to the assured. This was the view of the case taken by the learned judge who tried the cause, and judgment was allowed in favor of the plaintiff for $400, less such unpaid balance of the notes.

We are unable to avoid the conclusion that the contract required the payment "in cash" of the annually accruing interest on the outstanding notes, in order to keep in force the insurance for the reduced sum of $400, and that the defendant was under no obligation to apply the dividends in payment of such interest. The language of the policy above recited clearly and explicitly declares that the interest is to be so paid. The clause in parentheses as to the interest being paid "in cash" may be noted; but especially important in its bearing upon this matter is the language embraced in the statement of the condition upon which the insurance company will, notwithstanding a default on the part of the assured, pay a proportional part of the original sum insured. The expressed *condition* is that "all premium notes must be taken up, *or the interest thereon be paid annually in cash,* on the date of the annual maturity of the premium,

*until the notes are canceled by returns of the surplus."* It would be palpably inconsistent with this, a simple contradiction of terms, to say that the "surplus" (dividend) is applicable in payment of the annually accruing interest as well as of the principal. Such particular language bears but one possible meaning, and it cannot be deemed to be modified by the general language indicating the applicability of dividends in payment of the notes. Even if the statement indorsed on the policy were to be deemed a part of the contract, it could not be regarded as changing or modifying the meaning otherwise to be given to the language above recited. While the indorsed statement declares that dividends "will be applied towards paying the notes," and that the notes "are to be paid only by the dividends, or by deductions from the policy when it matures," there is a repetition in substance of the condition in the policy, above referred to, upon which the company will pay a proportional part of the sum insured, even though the assured should make default in the payment of premiums, the language being: "Provided, the interest on such loan notes as may be outstanding *is paid annually in cash until the notes are canceled by dividends."* In *Ewald* against this defendant, (60 Wis. 431, 19 N. W. Rep. 513,) a policy not materially different from that before us, and in the main exactly the same, was construed as we think this must be construed. The earlier case of *Hull* against this defendant (39 Wis. 397) was decided upon a policy on which was indorsed the statement that dividends would be applied first to pay the unpaid interest on loan notes, and then to the notes themselves.

Thus far attention has been directed especially to the *manner* in which interest was required to be paid. What has been said upon that subject touches a point to be more fully considered, viz., what was the effect of the default in the payment of interest? The assured having paid four annual cash premiums, and given four annual notes, prior to such default, did that constitute four "complete annual premiums paid at the time of such default," so that the policy became nonforfeitable to the extent of four tenths of its amount? The provision in the policy expressing the agreement of the defendant to pay a proportional part of the sum insured, in case of default in the pay-

ment of any premium, is distinctly qualified by what immediately follows, in the nature of a proviso or condition, commencing with the words, "But in order to secure such proportion of the policy," etc., and which is fully recited above.    But one meaning can possibly be given to this language, and there is no way to avoid the conclusion that it qualifies the preceding sentence, expressing the agreement of the company to pay, by annexing the *condition* that all premium notes should be taken up or the interest be paid annually in cash until they should be canceled by dividends.    The consequence of non-compliance with this condition is expressed in the alternative clause, "or the whole policy will be forfeited."    But that, too, is qualified by adding, "*unless* one or more annual payments have been made in full by cash payment or by application of the dividend," in which case, as this language is to be construed, the policy becomes nonforfeitable to the extent of a number of tenths corresponding with the number of yearly payments thus completed.    In the language indorsed on the policy, "each complete yearly payment secures one tenth."    In other words, if the cash premium for any year or years, and the notes for such year or years, had been fully paid, the obligation of the defendant to the extent of a corresponding number of tenths of the amount of the policy would be no longer subject to the condition, would become absolute, and would not be discharged by any subsequent default of the assured in respect to the premiums or notes for subsequent years.

The provision in the nature of a condition or proviso, which we deem of controlling effect, was not in the policy considered in the case of *Symonds* against this defendant, (23 Minn. 491.)    It seems to have been, after that decision, introduced in the form of policy used by the defendant, for the very purpose of clearly expressing and making effectual the condition upon which the liability of the defendant should depend, which it unsuccessfully relied upon in that case.

Our conclusion as to this matter is, that the assured having failed to keep up the payment of interest on his outstanding notes, the policy did not become absolute and nonforfeitable as to four tenths of the original sum, but that, on the other hand, it was wholly forfeited, unless the first year's note may be deemed to have been paid

at the time of the default, so as to make the policy nonforfeitable as to one tenth.

This brings us to another question. Should a dividend have been allowed and credited on the notes April 16, 1875, notwithstanding the failure of the assured to pay in cash the interest which fell due on that day? The answer of the defendant and the testimony of its actuary justified the trial court in the conclusion, which may be deemed to be involved in the decision, that the only reason this dividend was not allowed and credited April 16, 1875, as had been done in the four preceding years, was not that the dividend had not been earned, but that the policy was deemed to be wholly forfeited by the nonpayment of interest at that time. That is the reason stated in the testimony referred to, and there is no evidence to the contrary; and it further appears that prior to that date the defendant had notified the assured that a dividend would be credited on that day if he should at the same time pay the interest then to fall due on his notes. Hence we deem it unnecessary to consider whether in making such allowances of dividends the defendant anticipated its obligation, crediting the same one year earlier than it was required to do.

We are of the opinion that on the 16th of April, 1875, the defendant should have allowed credit for the dividend already earned from the premium paid in 1873, if, as we find would have been the result, that would have avoided a total *forfeiture* of the policy. The conditions affecting the obligations of the two parties—of the one party to credit on the first note (upon which there remained unpaid only the sum of sixty-two cents, with interest) the dividend earned, and of the other party to pay the yearly interest on the unpaid notes— were not the same. The consequences to the respective parties of a failure of the defendant to credit the dividend, and of the assured to pay the interest, were very different. The failure of the assured to pay the interest did not injure the defendant to the extent of the amount of such interest. For the loss of such interest it was compensated in a measure, at least, as the contract contemplated, by the extinguishing to a corresponding extent of its obligation to pay the insurance. The policy became *pro tanto* forfeited, and the defendant gained, without further risk or liability, what had been paid as

premiums and interest.    But the failure to credit the dividend .($8.02) was not merely a loss of so much by the assured, but it resulted in a forfeiture of the entire policy which otherwise would have become a nonforfeitable endowment to the extent of $100, and for that loss and forfeiture there was no compensation to the assured. For this reason the defendant is to be held strictly to the performance of its obligation to credit the dividend earned and payable at that time.    Forfeitures are not favored either in law or equity, and so far as is reasonable, contracts are to be construed so as to avoid a forfeiture.    *Symonds* v. *Northwestern Mut. Life Ins. Co., supra; Franklin Ins. Co.* v. *Wallace,* 93 Ind. 7, and cases cited.

The holding that this dividend should have been applied leads to the conclusion that the first note was more than paid at the time of the default of the assured, save as to the interest for one year on the sum of sixty-two cents.    That would amount to four cents.    As to this, the maxim, *de minimis non curat lex,* should be applied, especially when to do so would prevent a forfeiture.    The policy became then a paid-up policy or endowment to the extent of one tenth, —$100.

But, by provisions of the policy not heretofore noticed, the notes remaining unpaid at the maturity of the policy were to be deducted from the endowment thus earned.    The expressed agreement of the defendant to pay at maturity the sum insured, is qualified by the clause, "the balance of the year's premium, and all notes given for premiums, if any, being first deducted therefrom."    The notes given by the assured embraced a similar provision.    But it is hardly necessary to say that against the notes so to be deducted, should be offset the annually accruing dividends, and while, as has been considered, the defendant, by very explicit language in its policy, exempted itself from the obligation to apply dividends to the payment of *interest before forfeiture,* and while the keeping up of the payments was effectual to secure paid-up endowments, that provision and exemption extended no farther; and when payments for one or more years had been completed, and endowments to the extent of a corresponding number of *tenths* of the policy secured, and the policy as to the remainder became forfeited, we see nothing in the contract to

oppose the conclusion that dividends were applicable in discharge of the interest, as well as of the principal, of the outstanding notes, and that only the amount of the notes which shall remain uncanceled by dividends, at the time of the maturity of the policy, is to be deducted from the endowment. For this purpose the general language found in the policy, and indorsed thereon, to the effect that dividends would be applied towards paying the notes until they should be canceled, is applicable, without being limited merely to the *principal* of the notes.

The conclusion is that the assured secured an endowment of one tenth of the policy, $100, instead of four tenths, as found by the district court, and that the plaintiff was entitled to recover that sum, less the amount remaining unpaid on the notes, ($28.82,) and the judgment appealed from will be modified accordingly.

(Opinion published 52 N. W. Rep. 988.)