JONES v. SOVEREIGN CAMP, W. O. W.—67 S. W. (2d) 159.

Western Section.  October 28, 1933.

Petition for Certiorari denied by Supreme Court, January 27, 1934.

Ross & Ross, of Savannah, for appellant.
Galbraith & Mitchell, of Henderson, for appellee.

SENTER, J.  This is an appeal from the decree of the chancellor in favor of complainant and against the defendant on a benefit certificate in the sum of $1,000 issued by the defendant on the life of Flavous R. Jones, deceased, who was the husband of Edith E. Jones, the named beneficiary in the certificate.  A jury was demanded by complainant in her bill, but the demand for the jury was waived and the cause was heard before the chancellor sitting as a jury on the oral evidence, the exhibits, and the entire record.  There is no conflict as to the facts, and the question presented on this appeal is the proper construction to be given to certain provisions contained in the benefit certificate.

The defendant is a well-known fraternal benefit association with a lodge system, a constitution, laws, and by-laws for its government. The deceased, Flavous R. Jones, was a member of this fraternal order and on the 28th day of March, 1914, the defendant issued to him its benefit certificate No. 47184, for the sum of $1,000, in which the mother of Flavous R. Jones was named as the beneficiary.  It appears that there was a provision in said original certificate to the effect that, if the member should become totally and permanently physically disabled after he had reached the age of thirty years, and he having complied with the constitution, laws, and by-laws of the order, certain annual amounts would be paid to him equal to 10 per cent of the amount due as if his death had occurred, such payments to be charged

against the policy, and at his death only the remaining amount to be paid to his beneficiary. In that certificate there was also a provision for the payment of the sum of $100 for the erection of a monument to the deceased member.

It appears that this original certificate remained in force until the 14th day of March, 1924, and on that date, Flavous R. Jones made application for the change of the beneficiary, his mother, to his wife, the complainant Edith Jones. Whereupon, a new certificate was issued, in which the wife, Edith Jones, was named beneficiary. This new certificate was dated March 14, 1924, for the same amount as the original certificate. There were some changes made in the terms and provisions in the new certificate from the original or surrendered certificate, in that the new certificate provided that a temporary disability benefit after five years' membership, or an old age disability benefit at the age of seventy, equal to the full amount of the reserve accumulation, less any indebtedness to the association, would be paid to the member. The provision in the original certificate for the erection of a monument was not contained in the new certificate.

Under the constitution and laws adopted by the order after the year 1924, a new form of certificate was provided, which contained many new provisions and conditions, and was to be issued to members of the order upon application made in accordance with the provisions of the by-laws. Prior to that time it appears that there was a change in the constitution of the order, and the laws and by-laws, whereby members were permitted to pay the rate previously required of them, but by so doing they would not be entitled to the monument and old age disability benefits as previously provided, unless certain increased rates were paid by the member, and also a reduction in the benefit certificate would automatically be made. It appears that Flavous R. Jones did not pay this increased rate after December 31, 1919, so as to get the benefit of the new provision in the certificate, but that he did continue thereafter to pay the former rate of 90 cents per month, and the local camp dues. It also appears that Jones continued to pay the former rate of 90 cents per month and local camp dues until June 1, 1929. In the meantime, it appears that the order had made an entirely new provision in the insurance of its members so as to have the benefit certificate conform to the usual provisions of old line insurance. It provided for a cash surrender value, for an automatic premium loan, for paid-up or extended insurance, and also for nonforfeiture values.

On the 11th day of June, 1929, Flavous R. Jones made application for the new form of certificate, which required the payment of premiums at the rate of $17.52 per annum, or $1.52 per month, in addition to the local camp dues. The new form of certificate was duly issued to the member, Flavous R. Jones, upon his said application, for the sum of $1,000, payable to Edith E. Jones, as the wife

of the member, and this suit is upon said new certificate, No. RW894631—L, issued by the defendant to Flavous R. Jones on July 5, 1929.

The deceased paid the monthly installments or premiums at the new rate from the date of the issuance of the new certificate up to and including the month of March, 1930, and did not make any payments after that date. He died on December 5, 1931.

It perhaps becomes immaterial, and does not now have any bearing on the questions presented by the assignments of error on this appeal, and did not have any material bearing on the result of the suit in the lower court, but it appears that on December 9, 1931, four days after the death of Flavous Jones, the defendant received a remittance of $1.77, with an application for reinstatement, which purported to have been signed by Flavous R. Jones under date of December 3, 1931, and in that application for reinstatement was contained a warranty, as a condition precedent to the right to have the certificate revived, to the effect that the member was then in sound bodily health. On December 17, 1931, the beneficiary wrote to the association advising that her husband was dead, and that he had been killed in an automobile wreck on December 15, 1931, which was in fact ten days after the death of her husband. Upon the receipt of the proof of death it was discovered by the defendant that the death of the member had occurred before the application for reinstatement was made. We refer to this incident because it is commented upon at some length by appellee in the brief filed in this court. However, there is now no dispute but that the deceased died on December 5, 1931, without ever having been reinstated. The complainant predicates her right to recover the amount of the benefit certificate on the ground that by a proper construction of the provisions of the contract, which will be hereinafter discussed, the certificate was still in force under the extended insurance provision on December 5, 1931, the date of the death of the insured. The chancellor, by his decree, sustained this contention of complainant, and decreed a judgment in favor of complainant for the face of the policy, with interest thereon, and costs of the cause, but disallowed and denied the claim of complainant for the statutory penalty.

The assignments of error of appellant are directed toward this holding of the chancellor, and to the construction given by the chancellor to the provisions contained in the benefit certificate sued on.

We deem it unnecessary to take up and consider the assignments of error separately, since the only question presented on this appeal is the proper construction to be given to certain provisions appearing in the benefit certificate.

The pertinent provisions of the contract necessary to be considered are as follows: On the front or first page of the certificate, among other provisions, is the following:

"Will pay the cash surrender value according to paragraph 2, page 2 hereof; or

"Automatic premium loan: Will advance automatic premium loans as set forth in paragraph 3, page 2 hereof, or . . .

"Will grant paid-up or extended insurance in accordance with paragraph 2, page 2, hereof."

On the first page it is further provided:

"This certificate is issued and accepted with the express agreement that the provisions and benefits contained on this and the three succeeding pages hereof, and in any authenticated riders attached hereto, form a part of this contract as fully as if recited over the signatures hereto affixed.

"*The non-forfeiture values shall be computed as if this certificate had been issued on the first day of June, 1923,*

"Issued at Omaha, Nebraska, this 5th day of June, 1929." (Italics ours.)

On the second sheet or page of the benefit certificate is contained what is designated as "special provisions and conditions," but only the second and third of the special provisions and conditions present the question for construction. The second provision is as follows:

"2. Cash Surrender, Loan Value, Paid-up and Extended Insurance: After thirty-six monthly payments on this certificate shall have been made should the member fail to pay any subsequent monthly payment, the member, within three months after due date of the monthly payment in default, but not later, upon written application and legal surrender of this certificate, may select one of the following non-forfeiture options:

"Option (a). The Cash Surrender Value set forth in Column 1 of Table A on page 3 hereof for the period to the end of which premiums have been paid in full.

"Option (b). A Paid-up Certificate for the amount set forth in Column 2 of Table A, on page 3 hereof, for the period to the end of which premiums have been paid in full.

"Option (c). Extended insurance from such due date, for the amount of the death benefit on page 1 hereof, but without total and permanent disability benefits, for the period specified in column 3 of Table A on page 3 hereof, for the period to the end of which premiums have been paid in full.

"If there be any indebtedness against this certificate, the cash surrender value set forth in Column 1 of Table A on page 3 hereof shall be reduced thereby, and the value of the options above named shall be decreased proportionately.

"3. Automatic Premium Loan. After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payment be not paid on or before its due date, and if the member has not prior to such due date, selected one of the options

available under the non-forfeiture provisions of this certificate, the Association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of 5% per annum, and any other indebtedness hereon to the Association, equal the cash value hereof at the date of default in the payment of the monthly payments. When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void; provided, that while this certificate is continued in force under this provision, the member may resume the payment of monthly payments without furnishing evidence of insurability, and the accumulated loans and interest thereon shall become a lien upon this certificate and shall continue to bear interest at the same rate. Provided further, that such lien may be paid in whole or in part at any time by the member, but if not paid said loan and accumulated interest thereon shall be deducted upon any settlement with the member, or from the amount payable at the death of the member.''

On page 3 of the certificate is contained a table setting forth in respective columns the cash value or loan value at the end of certificate year; paid-up insurance and extended insurance.

It is conceded that, if the thirty-six monthly installment or premium payments should be computed from the 1st day of June, 1923, under the provision appearing on the first page of the certificate, then under condition 3 (the automatic premium loan provision) contained on page 2, would operate to extend the certificate beyond the date of the death of Jones, who died on December 5, 1931. On the other hand, if it should be construed that the thirty-six monthly installment payments should be computed from the 5th day of July, 1929, the actual date on which the certificate was issued, that in that event the policy lapsed and was not in force at the time of the death of the deceased member.

It is the contention of appellant that the language in the policy with reference to automatic premium loans, or extended insurance, is clear and unambiguous, and is a clear statement that the thirty-six monthly payments must have continued for thirty-six months after the actual date of the issuance of the policy, which was July 5, 1929. It is the contention of appellee that the thirty-six monthly payments should be computed from June 1, 1923. This contention is predicated upon the provision on the first page of the certificate which reads: ''The non-forfeiture values shall be computed as if this certificate had been issued on the 1st day of June, 1923.''

The matter of construing these provisions has not been before this court or the Supreme Court of this state, but so far as we have been able to find, these provisions, or provisions almost in the identical

language, have been construed by the Court of Appeals of the state of Missouri, in the case of Daly v. Sovereign Camp, W. O. W., reported in 226 Mo. App., 629, 44 S. W. (2d), 229, 231, and again in the same case on second appeal in 55 S. W. (2d), 743. In that case the court had under consideration the exact question that we have here. The court in that case, after referring to the certain provisions and conditions contained in the benefit certificate, proceeded to state:

"What then is the meaning of the contract? It will be observed that while the new certificate is to become effective on June 1, 1929, it is to bear the date of June 1, 1926, three years earlier. Also that withdrawal values, if any, are to be available to insured after he has made payments for three full years from date of application; while nonforfeiture values shall be computed 'as if this certificate had been issued on the 1st day of June, 1926.' There must be a difference between withdrawal values and nonforfeiture values, else why use different names for them? The first are allowable to insured alone while he is yet alive. The second are of advantage to insured merely in keeping his insurance alive by having the unpaid installments taken out of the amount otherwise due on the certificate after he is dead; and of these the beneficiary receives the benefit. So far then as concerns the above clause, calling for payment 'for three full years' from date of the application, it would seem to refer merely to the withdrawal privileges available to insured only, and not to the keeping of the insurance alive for a certain period while insured is living, or to the rights of the beneficiary after insured's death.

"As to the clauses 'after thirty-six payments,' etc., in the other provisions mentioned, What effect is produced on them by the provision that the certificate, though issued on June 1, 1929, is to be dated June 1, 1926, and the provision that the nonforfeiture values shall be computed as if the certificate had been issued on June 1, 1926? Certainly these unusual provisions perform some function, and what else can they do except to modify and govern the 'full three years' and the 'thirty-six monthly payments' clauses? It is too narrow a construction to hold that the clause saying the nonforfeiture values shall be computed as if the certificate was issued on June 1, 1926, merely refers to the elements or basis of the computation to be made in case there is legally anything to be computed. As we view it, this clause governs not only the basis and elements of the computation of the amount due, but, together with the one in relation to the date of the certificate, also governs and settles the question of whether there is legally anything to be computed. It means that the certificate is to be treated as if it had been issued on June 1, 1926, and this bears not only on the question of how the computation should be made, but also on whether any computation whatever should be made. If the clause now under consideration does not include and govern both of these matters, then there is no clause affecting the

provision that the policy is to be regarded as issued on June 1, 1926, so as to take away the effect it would otherwise have on the question whether the certificate is to be regarded as alive when insured died.''

It therefore appears that the Missouri case fully considered and disposed of the very contention that is now being made by appellant in this case, and answers, adversely to the contention of the defendant, the same line of reasoning that appellant proceeds upon in the present case.

In that case the Missouri court. in disposing of the question of the construction to be given the certificate, added as follows:

''But even if there is some room for defendant's contention in the matter above indicated, clearly the most that can be said is that the contract is vague in this regard and open to two possible constructions, and this is of no avail or comfort to defendant. It is well settled that, if the terms of the contract of insurance are ambiguous and call for construction, the contract must be given that construction most favorable to the insured.''

The question of construing the same or very similar provisions in the benefit certificate issued by the Sovereign Camp, W. O. W., to a member of the order, was before the Supreme Court of the state of Alabama. and the case reported in Higgins v. Sovereign Camp. W. O. W.. 224 Ala., 644, 141 So., 562. 563, decided March 10, 1932. The Alabama court took the same view of the question that the Court of Appeals of Missouri had taken in the Daly case, supra, and held that the thirty-six-month installments would be computed from April 1, 1925, the date referred to in the certificate of insurance in that case as in the present case. In that case the same contention was made by the fraternal order as is being made here, and, upon practically the same reasoning, the court in the Alabama case said:

''If it had only shown besides a date of issuance that it should bear an anterior date without expressing a purpose in doing so, we might conclude that such anterior date was to fix a more favorable premium rate—such as in Mutual Life Ins. Co. of N. Y. v. Barrett, 215 Ala., 142, 110 So., 275.

''But we can make no such assumption when it plainly states that the anterior date is fixed as a basis for making the very computation which appellant is seeking. The certificate in all its features has no other meaning. There is no computation of nonforfeiture values provided in the certificate except as we have indicated. Appellee drafted the certificate and caused it to be thus printed in blank form, showing a deliberate purpose to give it that effect. We also observe that the former certificate of this member contained no such nonforfeiture values or options. It seems to be so printed to have an anterior effect, for this purpose, for the benefit of its old members who surrendered their old contracts for the new ones.

322

"In this connection it seems pertinent to say that, by the use of one set of formulas, they are giving the certificate both a retroactive and prospective effect, so that the same form of contract may be used for both purposes."

After giving careful consideration to the very able and forceful argument of counsel for the defendant, both at the bar of this court and in the brief filed, and contentions made therein by appellant, we are constrained to reach the conclusion that the policy contract should be given the construction given it by the Supreme Court of Alabama, and the Court of Appeals of Missouri in the cases above referred to, and followed by the chancellor in the present case.

Without setting out at any further length the reason for the conclusion reached, we are content to adopt the reasoning of the Missouri and Alabama courts respectively, in the determination of the questions presented on this appeal.

It results that we find no error in the decree of the chancellor, and all assignments of error are overruled and the decree of the chancellor is affirmed. Judgment will be rendered here for the amount of the decree below in favor of complainant and against the defendant and surety on the appeal bond, with interest thereon from the date of said decree, and the costs of the cause, including the cost of this appeal.

Anderson and Ketchum, JJ., concur.