[Civil No. 3786. Filed April 29, 1937.]

[67 Pac. (2d) 474.]

GUADALUPE C. DE ALMADA, Appellant, v. THE SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, a Corporation, Appellee.

Mr. L. J. Cox, for Appellant.

Mr. Amos A. Betts, and Mr. Frank Swenson, for Appellee.

LOCKWOOD, J.—Guadalupe C. de Almada, hereinafter called plaintiff, brought suit against the Sovereign Camp of the Woodmen of the World, a corporation, hereinafter called defendant, to recover on an insurance certificate issued by defendant to Anselmo A. Almada, hereinafter called deceased, in which plaintiff, his wife, was named as the beneficiary. The trial of the action was commenced before the court sitting with a jury, but at the close of the evidence it was stipulated between the parties that the case might be withdrawn from the jury and submitted to the court for determination. This was done, and the court finally rendered judgment in favor of defendant, whereupon plaintiff appealed.

The facts are nowise in dispute, with one exception, which it is not necessary for us to consider in determining the appeal, and we state them as follows: On March 18, 1919, deceased made application for a beneficiary certificate with defendant, and on May 5th received such a certificate in the sum of $3,000. Thereafter, on September 13, 1920, he exchanged this certificate for one in like amount, but with a changed beneficiary. On June 27, 1929, he again made application with defendant for an exchange of certificates, and on July 27, 1929, the certificate herein sued on was issued and delivered to deceased, in lieu of the one issued in 1920, plaintiff being described therein as beneficiary.

This certificate contained, among other things, the following clauses:

"Twenty-Payment Certificate

"Age 48                 Monthly    Annual
               Rate    $10.86    $125.43

"Certificate No.
"RT–910054–L

"The Sovereign Camp of the Woodmen of the World.

"A Fraternal Beneficiary Association incorporated under the laws of the State of Nebraska referred to herein as the Association.

"Hereby issues this certificate to Anselmo A. Almada a member of Camp No. 57, State of Ariz. and upon receipt of satisfactory proof of death of the said member, while in good standing, . . . "

"Automatic Premium Loan

"Will Advance Automatic Premium Loans as set forth in paragraph 3, page 2 hereof, . . . "

"This certificate is issued and accepted with the express agreement that the provisions and benefits contained on this and the three succeeding pages hereof, and in any authenticated riders attached hereto, form a part of this contract as fully as if recited over the signatures hereto affixed."

"Effective as to payment period, values and provisions as if issued on the 1st day of July, 1925."

"3. Automatic Premium Loan: After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payment be not paid on or before its due date, and if the member has not, prior to such due date, selected one of the options available under the non-forfeiture provisions of this certificate, the Association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compounded interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the Association, equal the cash value hereof at the date of default in the payment of the monthly payments."

The certificate permitted the premiums to be paid monthly, and the premium for July, 1929, was duly paid, but thereafter no cash payments of premium were ever made by the insured or anyone else. On July 16, 1931, Almada died, and thereafter this suit was brought.

It was stipulated when the case was submitted to the court that the loan value of the certificate on September 1, 1929, when, in the absence of further premium payments it would normally have been forfeited, was $260.16, and that such amount, if paid to the company on the regular monthly installments as due, would have extended the certificate to and including May 31, 1931, and there would have still remained the sum of $10.69 for application on the payment of the monthly premium for June, 1931, if the law permitted an application on such premium of an amount of seventeen cents less than the full sum due.

There are certain general principles of law applying to life insurance policies, which we state as follows: (1) A life insurance policy is a contract and a court may not change the terms of the contract agreed upon by the parties, but must enforce it as made by them; (2) when the meaning of the contract is ambiguous, it is to be construed most strongly against the insurer and in favor of the insured; (3) forfeitures are not favored by the law, and every reasonable presumption is against a forfeiture. These are so elementary that no citations are necessary to sustain them.

There are four questions of law raised by this appeal, which we shall consider in the order which seems to us most advisable. The first is whether, under the provisions of the certificate, it was necessary for the insured to pay thirty-six monthly premiums after the date on which it was actually issued, to wit, July 27,

1929, in order that he might take advantage of the automatic premium loan feature above referred to, or whether the provision in the certificate that it should be "effective as to payment period, values and provisions as if issued on the 1st day of July, 1925," meant that the thirty-six monthly payments required for the automatic premium loan were assumed to have commenced with July 1, 1925, and to have been paid regularly to July, 1929, so that on September 1, 1929, this feature was already effective as to the $260.16, which it was stipulated had actually accrued as a loan value on the certificate.

This precise question has been raised very recently in a number of cases in which the present defendant was a party and on certificates quite similar in terms to the one involved herein. Admittedly, the leading cases on this question are *Higgins* v. *Sovereign Camp, W. O. W.,* 224 Ala. 644, 141 So. 562, 564, and *Daly* v. *Sovereign Camp, W. O. W.,* 226 Mo. App. 629, 44 S. W. (2d) 229, 232. These have been followed in the following cases: *Sovereign Camp, W. O. W.,* v. *Harder,* 227 Ala. 700, 150 So. 921; *Sovereign Camp, W. O. W.,* v. *Daniel,* 228 Ala. 699, 153 So. 918; *Sovereign Camp, W. O. W.,* v. *Downs,* 229 Ala. 702, 157 So. 914; *Sovereign Camp, W. O. W.,* v. *Thomas,* 171 Miss. 99, 157 So. 83; *Jones* v. *Sovereign Camp, W. O. W.,* 17 Tenn. App. 315, 67 S. W. (2d) 159; *Benjamin* v. *Sovereign Camp, W. O. W.,* 140 Kan. 378, 36 Pac. (2d) 993; *Sovereign Camp, W. O. W.,* v. *Hardee,* 188 Ark. 542, 66 S. W. (2d) 648. So far as we are advised, the only case as yet decided which holds the contrary is that of *Sovereign Camp, W. O. W.,* v. *Alston,* (Tex. Civ. App.) 82 S. W. (2d) 710. In the Higgins case, *supra,* the court applied the general rule above stated under (2), using this language:

"This member had been in good standing about thirteen years before this policy was issued. He had

aided in establishing its financial standing. It was not unreasonable that appellee should accord him some substantial benefits from his long and continuous contribution to its resources. This it undertook to do, as the contract imports, and as all parties agree, but by saying to him that we will cancel your old policy which contained no such values and give you a new one and will fix its date April, 1925, instead of now, April, 1929, as the date when your values shall be computed, both in fixing the date of their availability, and therefore of necessity the method of determining their worth. It is admitted that the four-year period was granted the policyholder. The only question is whether it shall not become available until three years after the new policy becomes effective. *We think that the rule of strict construction against appellee operates to a different result.*" (Italics ours.)

In the Daly case, *supra*, the same rule was applied as follows:

"But even if there is some room for defendant's contention in the matter above indicated, clearly the most that can be said is that the contract is vague in this regard and open to two possible constructions, and this is of no avail or comfort to defendant. It is well settled that, if the terms of the contract of insurance are ambiguous and call for construction, the contract must be given that construction most favorable to the insured."

Defendant urges that its policy in the Daly and Higgins cases contained these two provisions:

"The non-forfeiture values shall be computed as if this certificate had been issued on the 1st day of June, 1926."
"It is understood and agreed that withdrawal values, if any, on the new certificate will be available to me only after I have made payment on said new certificate for three full years from date thereof";

and that the conclusions in those cases were reached because the two quoted provisions together lead to that

result, and urges that in the present certificate, the only provision applicable is the single one which we have quoted in the following language: "effective as to payment period, values and provisions as if issued on the 1st day of July, 1925." We are of the opinion that the language in the present certificate is even more strongly in favor of the construction urged by plaintiff, since instead of attempting to separate between "non-forfeiture" and "withdrawal" values it states "values" in general are effective as though the certificate was issued on the 1st day of July, 1925. It seems to us that it would be a serious injustice to the holder of an insurance certificate which, after nearly ten years, had accumulated a cash surrender value of $260.16, if, when he took out a new certificate in exchange for the old, it should be construed to mean that this surrender value was "frozen" for three full years after the certificate was issued and subject to forfeiture in case he did not make thirty-six additional premium payments thereon, in the absence of language which specifically and explicitly so provided. We think the natural construction which any man would place upon the certificate relied upon by plaintiff is that of July 27, 1929, he should have all the benefits of the certificate then issued to him in the same manner as though it had been issued on July 1, 1925, and he had complied fully with all its conditions from that date on. We hold, therefore, in accordance not only with the overwhelming weight of authority, but what we think is sound reason, that on September 1, 1929, there stood to the credit of the insured the sum of $260.16 which, according to the terms of his certificate, was available, and, under the circumstances, necessarily to be used by the defendant in maintaining the certificate in full force and effect until such time as such fund was completely exhausted.

■ We then consider the second question. Did such loan value increase in value during the period in which the monthly premiums were paid therefrom in the same manner as it would had the insured paid the same in cash from his own funds? There is a greater division of authority upon this point than upon the previous one. Most of the cases which we have cited hold that it does; that, in substance, the situation is the same as though the insured had personally borrowed the full amount of the loan value from a third party, and then paid it on his premiums as they became due, in which case, of course, the reserve value of the certificate would have increased in the usual manner. We think, however, that the cases which so hold have overlooked the fundamental reason why cash surrender and loan values are allowed at all. This reason is, of course, that by the payment of insurance premiums the cash reserve of the company is increased and, in mutual companies at least, the policyholders, who in reality are the stockholders of the company, are entitled to whatever these assets amount to, after deducting the proper reserve to protect policies which are continued in force. When the company makes either a direct or an automatic loan from its assets to a policyholder, for the sole purpose of paying premiums, nothing is added to its reserves; it is merely transferring the assets from one drawer to another, or, in other words, robbing Peter to pay Paul. We think, therefore, the just rule is that while automatic extended insurance, in a certificate such as this, maintains the certificate in force so far as insurance is concerned until the amount available is exhausted, the cash loan value remains fixed as it was at the time the policyholder made his last independent payment to the company.

■ The third question is whether there was sufficient of the automatic loan value to maintain the certi-

ficate in force until the death of Almada on July 16, 1931. It is the contention of defendant that premiums are to be paid in full and not in installments, and that it can only be required to apply the amount due the insured under the loan value when there is sufficient to pay the full amount of the premium due, whether it be payable monthly, quarterly, or annually. We have held that in Arizona this rule is fixed by statute. Section 1843, Rev. Code 1928; *Equitable L. Assur. Soc.* v. *Pettid,* 40 Ariz. 239, 11 Pac. (2d) 833; *McDonald* v. *Calkins,* 31 Ariz. 161, 251 Pac. 458; *Terry* v. *State Mut. L. Ins. Co.,* 90 S. C. 1, 72 S. E. 498. Admittedly after the premium for the month of May, 1931, had been paid, there remained subject to the automatic loan certificate $10.69, which was just seventeen cents short of the sum necessary to pay the premium for the month of June. If we were to apply the rule contended for by plaintiff in the famous case of *Shylock* v. *Antonio,* we would be compelled to hold the position of defendant was well taken, but there is a familiar maxim of law which has been applied to circumstances precisely like that of the case at bar, which takes it out of the rule in the case just cited. In *Van Norman* v. *Northwestern Mut. L. Ins. Co.,* 51 Minn. 57, 52 N. W. 988, 990, the question of the application of certain credits to a life insurance policy to avoid a forfeiture was before the court. It appeared therein that the amount which should have been applied was just 4 cents short of sufficient to save the policy under the strict letter of the law, and the court said: "As to this maxim, *de minimis non curat lex,* should be applied, especially when to do so would prevent a forfeiture," and held that the policy was not forfeited. We think this a wise and salutary rule to be applied to the present situation, and that in so doing we in nowise violate the rule laid down in the Pettid case, *supra.* In that case, the amount lacking was some $11.43, a

fairly substantial sum, and had the missing sum in the present case been anything like that amount, we should have applied the same rule. But 17 cents is an amount small enough to bring the case within the principle of *Van Norman* v. *Northwestern L. Ins. Co., supra.*

If the premium for the month of June, 1931, was duly paid, and we have held that we so consider it, the payment of the premiums on the certificate was in nowise in default until the first day of July, 1931. But, by the provisions of section 1847, Revised Code 1928, which appeared in substance in the Revised Civil Code of 1913 as paragraph 3453, all life insurance policies, as a matter of law, contain in substance the following provision:

"2. That the insured is entitled to a grace of either thirty days or of one month within which the payment of any premium after the first year may be made, subject to an interest charge not in excess of six per cent per annum for the number of days of grace elapsing before the payment of the premium, during which period of grace the policy shall continue in full force, but if the policy becomes a claim during the said period of grace before the overdue premium or the deferred premium of the current policy year, if any, are paid the amount of such premiums, with interest on any overdue premium, may be deducted from the amount payable under the policy."

Under this section, therefore, if the insured died at any time before the 31st day of July, 1931, his policy became a claim and was payable, notwithstanding that the premium for the month of July had not been paid. █ It appears, therefore, that the learned trial court erred in rendering judgment against the plaintiff, for, in accordance with the facts and principles of law set forth above, the certificate became a valid claim against defendant upon the death of the insured.

Plaintiff, however, is not entitled to recover the full face of the policy. By its terms, when the automatic premium loan was made, such loan became a debt from the insured to the company, to be deducted from the face of the certificate in case of his death without repayment. In the second place, by the provisions of subdivision 2, section 1847, *supra,* above quoted, since the certificate became a claim during the period of grace, the insurer was also entitled to deduct the overdue premium.

The judgment of the superior court is reversed, and the case remanded, with instructions to render judgment in favor of plaintiff for the amount of the face of the policy, less the $260.16 loaned the insured under the automatic premium loan feature, and less the overdue premium for the month of July, 1931.

McALISTER, C. J., and ROSS, J., concur.