[Civil No. 3761.   Filed June 7, 1937.]

[68 Pac. (2d) 677.]

P. P. CORRELL, Appellant, v. PEOPLES FREIGHT LINE, INC., a Corporation, Appellee.

Mr. Ben C. Hill, for Appellant.

Messrs. Mathews & Bilby and Mr. T. K. Shoenhair, for Appellee.

LOCKWOOD, J.—This is an appeal by P. P. Correll, hereinafter called plaintiff, from a judgment of the superior court of Pima county, in which he was plaintiff and cross-defendant, and Peoples Freight Line, Inc., a corporation, hereinafter called defendant, was defendant and cross-complainant. The facts of the case, stated as strongly in support of the verdict and judgment as they may reasonably be taken, are as follows:

The defendant is a corporation organized under the laws of Arizona, and for some time before and ever since March 4, 1931, has been engaged in the business of hauling freight between Tucson and Phoenix, and other points in Arizona. On the date above stated, all of the issued and outstanding capital stock of the defendant was owned by plaintiff. The Arizona Storage & Distributing Company, hereinafter called the company, was a corporation organized under the laws of Arizona, and on the date first mentioned had entered into an agreement with plaintiff, whereby it purchased from him all the capital stock of the defendant, and at the same time made an agreement whereby he warranted that the sundry accounts payable of the defendant would not exceed the sum of $3,189, as itemized in a list furnished by plaintiff to the company. As soon as this stock was sold to the company, Mr. R. E. Moore, Sr., became president of the defendant, and R. E. Moore, Jr., its secretary and treasurer. Thereafter the Moores came to Tucson and had a conversation with plaintiff. The books of the defendant showed that it was indebted to him in the sum of $329.28, mostly for rental of certain premises used by the defendant and belonging to plaintiff, and the Moores offered to pay this balance. Plaintiff refused to accept the payment, stating that it had developed there were several claims payable by defend-

ant, not included in the list of accounts payable which plaintiff had furnished at the time of the transfer of the stock, which would have to be settled by defendant. He, therefore, told the Moores that defendant should pay these accounts as they appeared to be due, and charge them against his account with it, and that he would have a final reckoning with defendant, after all the outstanding claims had been disposed of. No list of these excess accounts was ever given the Moores, nor was there any agreement as to when the final reckoning should be had. Thereafter all of the accounts payable included in the list furnished by plaintiff to the company at the time of the sale, amounting to $3,189 as aforesaid, were paid by the defendant and, in addition thereto, it paid out of its own funds many unlisted claims against it which had accrued before the transfer of the stock. At the same time, it became further indebted from time to time to plaintiff, principally for rental for certain premises of plaintiff used by defendant.

In May, 1932, R. E. Moore, Jr., severed his connection with the company, no final settlement of their account having as yet been had between plaintiff and defendant, and shortly thereafter the company became insolvent, and made an assignment for the benefit of its creditors. At that time all of the stock of defendant still belonged to the company, and was one of the assets turned over to the assignee. There were several meetings of the creditors of the company and of the defendant, and the assignee attempted to determine what the liabilities of the defendant were, so that he might make a sale of its stock, and requested at these meetings that all claims against the company and the defendant be presented, so that he might determine what the equities of the situation were, but plaintiff, though present with his attorney, made no claim then

against defendant, and the assignee had no knowledge that it was indebted to plaintiff in any sum.

Mr. Tom Vinson was desirous of purchasing the stock of the defendant company, and attended the meetings with that purpose in view. During one of the meetings, he asked plaintiff whether the defendant was indebted to him, to which the latter answered that he did not know. In the latter part of 1932, the assignee sold to Vinson all the stock of the defendant, which sale expressly included all of its assets and liabilities. In other words, Vinson took over the entire ownership of defendant, with all of its assets and subject to all of its liabilities. Shortly thereafter, Vinson called on plaintiff regarding the indebtedness of $329.98 above referred to, and asked him in regard to the account, to which he replied that he did not know just how the account stood, and it was not until nearly a year thereafter that Vinson was informed plaintiff was claiming a balance due on an open account.

On the 19th of November, 1934, plaintiff filed this suit, claiming a credit in his favor of $776.74 as a balance due on an open account. Defendant answered, admitting the account and the charges made therein by plaintiff, but alleging, instead of there being a balance thereon due plaintiff, he was indebted to it in the sum of $264.59.

The case was tried to a jury which, by its verdict, found that the account between the two parties balanced, and that plaintiff was not entitled to recover on his complaint, nor defendant on its cross-complaint. Judgment was rendered on the verdict, and after the usual motion for new trial was made and overruled, this appeal was taken.

There are four assignments of error, which contain several subdivisions. They naturally raise, however, three legal questions, and we will consider them in that manner. Plaintiff's theory of the case

is that defendant's counterclaim is based upon the warranty made to the company that the accounts payable of defendant were limited to $3,189. He claims that since this warranty did not run with the property, it could not inure to the benefit of the defendant. It is the defendant's position that all of the amounts paid by it and set up in the counterclaim were payments made by it, at plaintiff's request, on an open account between it and plaintiff before Vinson purchased its stock, and that these amounts were, therefore, assets of the defendant, and since the sale to Vinson carried with it all of the defendant's assets, as well as its liabilities, it could counterclaim for these payments. In other words, defendant was relying upon an express authority given by plaintiff to the Moores as the officers of defendant, to pay these obligations and to charge the payment to his account.

We are of the opinion that the record supports defendant's view of the situation. The warranty, it is true, ran only to the company, the purchaser of defendant's stock, and if defendant had paid any bills incurred by it, even in excess of this amount and before the sale, without any special authority from the plaintiff, it is very true that it could not, on the strength of the warranty, set off such payments against any indebtedness which it might owe to plaintiff. If, on the other hand, plaintiff expressly authorized defendant to make such payments, and to charge them to his account, although the authority was given *because* of the warranty, the liability of plaintiff was not on the warranty, but rather on a verbal agreement between him and defendant's officers. Plaintiff claims, it is true, that even admitting defendant's theory of the conversation with the Moores and that he did instruct them to make payments, these payments were limited to the sum of $329.98, the amount which it is agreed was owed plaintiff by defendant at that time. We

are of the opinion that the testimony of the Moores will not bear that construction. It was rather a general instruction to pay all just claims due, and charge them against plaintiff in the open account.

The next objection is that under no theory of the evidence could the jury have reasonably arrived at the conclusion that the defendant's offsets exactly equaled the claim of plaintiff. It appears from the evidence that there were several items which defendant set up in its pleadings to sustain its counterclaim, which it admitted on the trial were not sufficiently established by the proof to warrant the jury in allowing them. These items totaled $226.41, and if we assume that the jury, on the admission of the defendant, disregarded them as it should have done, there would remain a balance of $38.18 due defendant. There were twelve other small items, ranging in amount from 30 cents to $28.82, and we cannot say which of these the jury allowed or refused to allow. There are a number of combinations of these items which bring the balance within less than 10 cents of being even. It is impossible for us to say, as a matter of law, that the jury could not reasonably have reached the conclusion that the balance was practically even. *"De minimus non curat lex,"* and we think a verdict should not be disturbed over so small a difference. *de Almada* v. *Sovereign Camp Woodmen of the World,* 49 Ariz. 433, 67 Pac. (2d) 474, just decided.

We further doubt whether plaintiff is timely in this objection. The court submitted to the jury three forms of verdict, one in favor of the plaintiff, one in favor of the defendant, and one in which the jury would find for the defendant on the plaintiff's complaint and for the plaintiff on the defendant's cross-complaint. There was no objection made by plaintiff to the forms of verdict submitted, nor to the verdict when it was returned by the jury. The first

time there was any question raised as to the possibility of the evidence sustaining the verdict was on the motion for a new trial. We think it is the general rule of law that if a form of verdict be submitted to a jury, which has no support in the law and the evidence, it is the duty of any party objecting thereto to make his objection at the time of the submission, or, at the very least, when the verdict is returned, in order that it may be corrected. When this is not done, the party failing to object may not object to the form of the verdict. *Kingman Imp. Co.* v. *Strong,* 2 Neb. (Unof.) 729, 89 N. W. 993; *Brown* v. *Tull,* 65 Okl. 119, 164 Pac. 785; *Thornhill* v. *Davis,* 121 S. C. 49, 113 S. E. 370, 24 A. L. R. 617; *Newton* v. *Brown,* 1 Utah 287.

We think what we have said covers the material questions raised by the assignments of error.

It appearing that no reversible error exists, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.