ROY E. DALY, APPELLANT, v. SOVEREIGN CAMP WOODMEN OF THE WORLD, RESPONDENT.—44 S. W. (2d) 229.

Kansas City Court of Appeals. December 7, 1931.

630

*W. J. Boyd* and *Miles Elliott* for appellant.

*De. E. Bradshaw* and *Charles F. Kellar* for respondent.

TRIMBLE, P. J.—This is an action by the beneficiary in a certifi-tificate of insurance issued by the defendant, a fraternal beneficiary association organized under the laws of Nebraska, and authorized to do business in Missouri. The certificate sued on was issued June 28, 1929, to Michael J. Daly, member of Camp No. 1, State of Missouri, for the sum of $1000 payable to insured's son, the plaintiff herein, on the death of his father. The latter died February 6, 1930. The court rendered judgment for defendant, and plaintiff has appealed.

On October 12, 1896, defendant issued to Daly a certificate of that date for $2000; and the monthly premiums, dues and assessments were duly paid thereon up to and including May 31, 1929.

On June 10, 1929, insured, pursuant to the defendant's by-laws, made application to exchange his certificate for "an ordinary life certificate in the amount of $1000." Said application contained the following:

"The new certificate is to become effective on the first day of June, 1929, and to bear the date of June 1, 1926, and age of fifty-seven."

. . . . . .

"It is understood and agreed that *withdrawal values*, if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from *date* thereof." (Italics ours.)

. . . . . .

"First payment on new certificate is for the month of June, 1929, and I warrant that all the required payments on my present certificate have been paid up to the first of the month for which said first payment is made."

. . . . . .

"In consideration of such exchange I hereby surrender my said benefit certificate to the Sovereign Camp of the Woodmen of the World, and I hereby, for myself and my beneficiaries, and for any-one claiming any right in, through or on account of said certificate, release said Sovereign Camp of the Woodmen of the World from any and all liability thereunder, and I agree to abide by the laws

of the Sovereign Camp of the Woodmen of the World as they now are or may hereafter be amended.''

. . . . . . .

Acting upon the application for an exchange of the old policy of $2000 for the new one of $1000 in lieu thereof, the defendant issued the policy or certificate which is herein sued on and which provided that defendant would pay a—

Death Benefit of $1000 to Roy E. Daly, son, the beneficiary under the certificate, or a—

Cash Surrender Value according to paragraph 2, page 2, of the certificate which paragraph, so far as applicable, reads as follows:

''2. Cash Surrender, Loan Value, Paid Up and Extended Insurance: After thirty-six monthly payments on this certificate shall have been made, should the member fail to pay any subsequent monthly payment, the member, within three months after due date of the monthly payment in default, but not later, upon written application and legal surrender of this certificate, may select one of the following nonforfeiture options:''

''Option (a). The Cash Surrender Value for the period to the end of which premiums have been paid in full.

''Option (b). A Paid Up Certificate for the period therein specified.

''Option (c). Extended Insurance from such due date, for the amount of the death benefit on page 1 hereof, but without total and permanent disability benefits, for the period specified in column 3 of table A on page 3 hereof for the period to the end of which premiums have been paid in full.'' Or an—

''Automatic Premium Loan in accordance with paragraph 3; page 2 of the certificate, which reads as follows:

''3. Automatic Premium Loan: After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payments be not paid on or before its due date, and if the member has not, prior to such due-date, selected one of the options available under the nonforfeiture provisions of this certificate, the association will without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the association, equal the cash value hereof at the date of default in the payment of the monthly payments. When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void; provided that while this certificate is continued in force under this provision, the member may resume the payment of monthly

payments without furnishing evidence of insurability, and the accumulated loans and interest thereon shall become a lien upon this certificate and shall continue to bear interest at the same rate. Provided further, that such lien may be paid in whole or in part at any time by the member, but if not paid said loan and accumulated interest thereon shall be deducted upon any settlement with the member or from the amount payable at the death of the member."

The certificate sued on contained the following further provision:

"The nonforfeiture values shall be computed *as if this certificate had been issued on the 1st day of June, 1926.*"

Column 2 of table A, referred to in the above option (c) providing for extended insurance, specified that at the end of the third certificate year, the term of extended insurance was two years and seventy-nine days. The required monthly payments were made on the new certificate from June, 1929, the month of its issue, to the month of November, 1929, both inclusive, but the payments for December, 1929, and subsequent months were not made, and insured was shown by defendant's records to have been suspended as of January 1, 1930, for nonpayment of the December, 1929, payment.

The death of the insured on February 6, 1930, occurred within less than two months after default in payment of the December, 1929, installment of premium, and was therefore within the period of extended insurance, to-wit, two years and seventy-nine days, allowed the insured by column 3 of table A.

As is usual in all such certificates of insurance, both the old and new contracts provided that the insured agreed to obey and be bound by the constitution and by-laws of the association and subsequent changes therein, and that failure to pay any assessment when due would result in suspension of the insured and render the policy or certificate null and void. But these provisions with reference to suspension and forfeiture of the certificate are modified by the provisions hereinbefore set out, to-wit: No. 2, dealing with cash surrender, loan value, paid up and extended insurance and especially option (c) thereof, together with the provision in paragraph 3 referred to in the automatic premium loan plan. By the former it is provided that if, after payment of thirty-six monthly installments shall have been made, the member should fail to pay any subsequent monthly payment, he could, within three months after default, but not later, have extended insurance for the amount of the death benefit (in this case $1000), for the period of two years and twenty-nine days. By the latter, it is provided that after thirty-six installments shall have been paid, if default is made in the payment of any subsequent monthly installment, and insured has not, prior to such default, selected one of the options available under the nonforfeiture provisions, the association will, "without any action

on the part of the member," advance as a loan the amount required to maintain the insurance in force from month to month until the accumulated loans, with five per cent compound interest thereon, and any other indebtedness to the association, shall equal the cash value of the certificate at date of default, and when such cash value has been *consumed* in loans advanced and interest thereon, *then* the certificate shall become null and void. In other words, on default in the payment of an installment, under the conditions specified, loans to meet such unpaid installments would come into existence *automatically,* and these would carry the insurance until the unpaid installments and interest consumed the cash value of the certificate. This automatic loan plan further provided that the member could resume payment of monthly installments without furnishing evidence of insurability, and the loans with interest should become a lien upon the certificate and bear interest, and said lien could be paid in whole or in part by the member, but if not paid, such loan and interest should "be deducted upon any settlement with the member *or from the amount payable at the death of the member.*" It is manifest, therefore, that upon the death of insured within two months after default in payment of the December, 1929, installment, the certificate was still in force by reason of the above specified modifying provisions, and the beneficiary is entitled to the amount of the certificate less the amount of the unpaid installments with interest, *unless* there is something in the contract which renders the above provisions inapplicable.

It is at this point that the defense of the association ultimately rests, it being very strenuously urged that the above provisions are not applicable until after the payment of three years' premiums have been made *since* the time of the issuance of the new certificate.

The only provisions in the contract applicable to this contention are the four following (the first two of which are in the application itself), namely:

### In the Application.

"The new certificate is to become effective on the first day of June, 192*9,* and to bear the date of June 1, 192*6,* and age of fifty-seven."

. . . . . . .

"It is understood and agreed that *withdrawal values,* if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from date thereof."

. . . . . . .

### In the Certificate.

"The *nonforfeiture values* shall be computed *as if* this certificate had been issued on the 1st day of June, 192*6.*" At this time insured's age was fifty-seven.

The provisions relating to cash surrender value, extended insurance and automatic premium loan, all are to be in force ''After thirty-six monthly payments on this certificate have been made.''

What then is the meaning of the contract? It will be observed that while the new certificate is to become effective on June 1, 1929, it is to bear the date of June 1, 1926, three years earlier. Also that *withdrawal* values, if any, are to be available to *insured* after he has made payments for three full years from date of application; while *nonforfeiture* values shall be computed ''as if this certificate had been issued on the 1st day of June, 1926.'' There must be a difference between withdrawal values and nonforfeiture values, else why use different names for them? The first are allowable to insured alone while he is yet alive. The second are of advantage to insured merely in keeping his insurance alive by having the unpaid installments taken out of the amount otherwise due on the certificate after he is dead, and of these the beneficiary receives the benefit. So far then as concerns the above clause calling for payment ''for three full years'' from date of the application, it would seem to refer merely to the withdrawal privileges available to insured only, and not to the keeping of the insurance alive for a certain period while insured is living or to the rights of the beneficiary after insured's death.

As to the clauses ''after thirty-six payments,'' etc., in the other provisions mentioned, what effect is produced on them by the provision that the certificate, though *issued* on June 1, 1929, is to be *dated* June 1, 1926, and the provision that the nonforfeiture values shall be computed as if the certificate had been issued on June 1, 1926? Certainly these unusual provisions perform some function, and what else can they do except to modify and govern the ''full three years'' and the ''thirty-six monthly payments'' clauses? It is too narrow a construction to hold that the clause saying the nonforfeiture values shall be computed as if the certificate was issued on June 1, 1926, merely refer to the elements or basis of the computation to be made in case there is legally anything to be computed. As we view it, this clause governs not only the basis and elements of the computation of the amount due, but, together with the one in relation to the date of the certificate, also governs and settles the question of whether there is legally anything to be computed. It means that the certificate is to be treated as if it had been issued on June 1, 1926, and this bears not only on the question of *how* the computation should be made but also on whether any computation whatever *should* be made. If the clause now under consideration does not include and govern both of these matters, then there is no clause affecting the provision that the policy is to be regarded as issued

on June 1, 1926, so as to take away the effect it would otherwise have on the question whether the certificate is to be regarded as alive when insured died.

But even if there is some room for defendant's contention in the matter above indicated, clearly the most that can be said is that the contract is vague in this regard and open to two possible constructions, and this is of no avail or comfort to defendant. It is well settled that if the terms of the contract of insurance are ambiguous and call for construction, the contract must be given that construction most favorable to the insured. [State ex rel. v. Trimble, 39 S. W. (2d) 355, 358; Mathews v. Modern Woodmen, 236 Mo. 326, 343-4; Kimbrough v. National Protective Assn., 35 S. W. (2d) 654; Shadley v. Grand Lodge of Brotherhood of R. T., 212 Mo. App. 653.]

The provision in the application that the *withdrawal* values shall be available to insured only after payments for three full years from date of application cannot prevail over the provisions in the certificate and the construction to be placed on them. [326 C. J. 1160, No. 273; Tate v. Jasper County, etc., Ins. Co., 133 Mo. App. 584, 588; Baker v. Keet-Round Tree D. G. Co., 2 S. W. (2d) 733, 738.] But the application supports the construction that the certificate was in force at the time of insured's death. The same rule of strict construction against the insurer applies to the application as to the certificate. [326 C. J. 1155-57.]

From all of which it follows that the judgment should be reversed and the cause remanded. It is so ordered. All concur.