148 So. 811
SOVEREIGN CAMP, W. O. W., v. BATTY.

2 Div. 24.

Supreme Court of Alabama.
June 8, 1933.

Rushton, Crenshaw & Rushton, of Montgomery, and Paul E. Jones, of Camden, for appellant.

J. M. Bonner, of Camden, and Pettus, Fuller & Lapsley, of Selma, for appellee.

PER CURIAM.

There is no material difference between the contract of insurance interpreted in Higgins v. Sovereign Camp, W. O. W., 224 Ala. 644, 141 So. 562, and the contract involved in this case, and the majority of the court, consisting of ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, FOSTER, and KNIGHT, JJ., are of the opinion that said case is sound and should not be overruled. On the authority of that case the court did not err in sustaining the plaintiff's demurrers to defendant's special plea.

All the justices concur in the opinion of BROWN, J., in so far as it deals with the question of evidence and the sufficiency thereof to make a prima facie case.

There being no error in the record the judgment is ordered affirmed.

Affirmed.

BROWN, Justice (dissenting in part).

The defense asserted by the defendant's plea 2 is that the policy contract lapsed because of the failure of the insured to pay the premium due on the 1st of June, 1930, and subsequent premiums maturing between that date and the date of his death on January 19, 1932. The trial court sustained the plaintiff's demurrers to the plea, and this ruling presents the major contention to be decided on this appeal.

Taking the averments of the plea as true, yet construing them most strongly against the pleader, the policy had lapsed, unless its life was preserved by the "Automatic Premium Loan" clause. The language of that clause is: *"After thirty-six monthly payments on this certificate shall have been paid,* if any subsequent monthly payments be not paid on or before its due date, and if the member has not, prior to such due date, selected one of the options available under the nonforfeiture provisions of this certificate, the Association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the Association, *equals the cash value hereof* at the date of default in the payment of the monthly payments. When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void; provided, that while this certificate is continued in force under the provision, the member may resume the payment of monthly payments without furnishing evidence of insurability, and the accumulated loans and interest thereon shall

become a lien upon this certificate and shall continue to bear interest at the same rate. Provided further, that such lien may be paid in whole or in part at any time by the member, but if not paid said loan and accumulated interest thereon shall be deducted upon any settlement with the member, or from the amount payable at the death of the member." (Italics supplied.)

The certificate was issued to the insured on the 27th day of February, 1930, in consideration of the surrender by the insured of another certificate issued to him by the defendant on April 10, 1896, which he had carried for thirty-three years, ten months, and seventeen days by paying a monthly premium of $1.15, a release of the defendant from all liability thereunder, and the agreement to pay a monthly premium of $15.84, and to conform to the by-laws of the association.

Written on the face of the certificate is the stipulation, that *"the non-forfeiture values shall be computed as if this certificate had been issued on the 1st day of Feb., 1924."* (Italics supplied.)

The second division or clause of the certificate designates the "non-forfeiture values" as "Cash Surrender, Loan Value, Paid-up and Extended Insurance," and this clause provides: *"After thirty-six monthly payments on this certificate shall have been made,* should the member fail to pay any subsequent monthly payment, the member, *within three months after due date* of the monthly payment in default, but not later, upon written application and legal surrender of this certificate, may select one of the following *nonforfeiture options."* (Italics supplied.)

The application for the issuance of the certificate, the foundation of this suit, stipulated: "It is understood and agreed that *withdrawal values,* if any, on the new certificate will be available to me only after I have made payments on said new certificate *for three full years from the date thereof."* (Italics supplied.)

The plea quotes: "Option (a). The Cash Surrender Value set forth in Column I of Table A on page 3 hereof for the period to the end of which premiums have been paid in full." The plea does not set out the table, but avers "That on said February 1, 1930, under the constitution, laws and by-laws of the Association, and the contract evidenced by said certificate, there was no surplus or accumulative reserve available to the said Chas. E. Batty to be applied to extended insurance cash surrender value or loan value."

From the language of "Option (a)" it is clear that the certificate contains a table showing the cash surrender value, and, in the absence of such table, the last-quoted averment of the plea is nothing more than the pleader's conclusion as to the effect of the contract, and it will be assumed that the cash surrender value of the certificate appearing in said table was sufficient to extend the insurance beyond the date of the insured's death.

Therefore the question to be decided is, Did the stipulation in the certificate that "The non-forfeiture values *shall be computed* as if this certificate had been issued on the 1st day of February, 1924," put in operation the "Automatic Premium Loan" clause after the lapse of thirty-six months, or three full years from February 1, 1924?

It was so ruled in Higgins v. Sovereign Camp, W. O. W., 224 Ala. 644, 141 So. 562, in which a contract in all respects similar to the one now under consideration was construed.

The appellant earnestly insists in brief that the construction of the contract in the Higgins Case was erroneous, and that the opinion in that case should be overruled.

While it appears from the opinion in the Higgins Case that the court gave much consideration to the question there presented, on re-examination of the question, I think it clear, when effect is given to all the provisions of the contract, it was not subject to the interpretation placed upon it in the Higgins Case.

In the first place, the last-quoted clause is subsidiary and deals with *computation of values,* and not payment of premiums. In fact, payment of premiums was not required between the date of February 1, 1924, and the date of the new certificate, February 1, 1930.

The clear effect of the entire transaction was to wipe out the old score, cancel the alleged prior indebtedness constituting a lien on the old certificate, and put the insurance on a new basis, and, after the premiums were paid as provided in the new certificate, to put in operation the nonforfeiture and automatic premium loan clauses of the contract; and the purpose and legal effect of the provision, last above quoted, was to increase these values by computing them from February 1, 1924, but until the payment of the thirty-six full premiums as provided for in the contract, putting into effect the nonforfeiture clause, the last-quoted clause was inoperative.

To interpret the contract otherwise is to ignore the positive language in the application, which is a part of the contract: "It is understood and agreed that withdrawal values, if any, *on the new certificate will be available to me only after I have made payments on said new certificate for three full years from the date thereof."* And in the "Cash Surrender, Loan Value, Paid-up and Extended Insurance" clause, that *"after thir-*

*ty-six monthly payments of this certificate* shall have been made * * * the member, within three months after due date of the monthly payment in default, but not later, upon written application and legal surrender of this certificate, may select one of the following *non-forfeiture options*." (Italics supplied.) And in the "Automatic Premium Loan" clause, that *"after thirty-six monthly payments on this certificate shall* have been paid" (italics supplied) the insurer will exhaust the cash surrender value of the certificate at the date of default in payment of the monthly payments, and interest, as loans on the certificate.

These several provisions deal specifically with the payment of premiums as necessary to put in effect the nonforfeiture clause, while, as we have shown, the clause antedating the contract for purposes of computation is dependent upon the payment of premiums as provided in the new certificate. This construction gives effect to all the terms and conditions of the contract and makes it a harmonious whole, while the interpretation adopted in the Higgins Case gives dominant effect to the subsidiary clause, to put in effect the major clauses of the contract contrary to their express language.

I am therefore of opinion that the plea presented a good defense, and that the court erred in sustaining the plaintiff's demurrers thereto.

The complaint consists of two counts in the form prescribed by statute for suits on policies of life insurance (Code 1923, § 9531, form 12), and the plea of the general issue did not impose on the plaintiff the burden of proving the payment of premiums, and in the absence of a special plea—the condition of the record after the special plea was eliminated by the ruling on the demurrer—the evidence going to show forfeiture for nonpayment of premiums was not material and was properly rejected. Code 1923, § 9470; Benes v. Bankers' Life Ins. Co., 282 Ill. 236, 118 N. E. 443; Pickett v. Fidelity, etc., Co., 60 S. C. 477, 38 S. E. 160, 629; 33 C. J. page 88, § 802.

■ The policy offered in evidence states that it is an "ordinary-whole life certificate," importing that it is not a contract of insurance for a single month or year, with the privilege of renewal as each premium becomes due and is paid, but is a single and entire contract, as its terms show, having its inception in the issue of the policy, continuing during the life of the insured and payable at his death, subject to forfeiture for nonpayment of premiums. Fearn, Ex'r

v. Ward, Adm'r, 80 Ala. 555, 2 So. 114. When the policy was offered in evidence, with proof of loss, the plaintiff made a *prima facie case.* Sovereign Camp, W. O. W. v. Burrell, 204 Ala. 210, 85 So. 762.

I recognize that this is what may be termed "a hard case," because, if the foregoing is a correct interpretation of the contract, the plaintiff cannot recover, although her husband had carried the insurance on his life and paid the premiums thereon for twenty-five years and more, and on the face of the policy it is stated: "Rate $1.15, payments to cease after 25 years." This statement means nothing unless it means that after twenty-five years' premiums have been paid it becomes a paid-up policy, yet the insured had paid premiums thereon for more than eight years, beyond the twenty-five years. This fact is no doubt what prompted the defendant's action in inducing the insured to surrender the old certificate for one that brought greater revenues into its coffers. But courts cannot make contracts for parties or protect them against their own imprudence, unless they can show fraud and deceit of the other party. Sovereign Camp, W. O. W. v. Feltman, 226 Ala. 390, 147 So. 396.