No. 31,730

PEARL BENJAMIN, *Appellee*, v. THE SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, *Appellant*.

No. 31,731

FRANK THOMAS F. RUTLEDGE, *Appellee*, v. THE SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, *Appellant*.

(36 P. 2d 993)

Opinion filed November 3, 1934.

George R. Allen and Richard F. Allen, both of Topeka, for the appellant.

W. L. Cunningham, D. Arthur Walker, Fred G. Leach and William E. Cunningham, all of Arkansas City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Case No. 31,730 is an action on a fraternal benefit certificate. A jury was waived; many of the facts were stipulated; judgment was for plaintiff, and defendant has appealed. The legal question presented is whether the certificate was in force at the time of the death of the insured.

Plaintiff is the beneficiary named in the certificate and was the wife of the insured. Defendant is a fraternal benefit society authorized to do business in this state. In April, 1914, on the application of William C. Benjamin, defendant issued to him a benefit certificate in the sum of $1,000, with a monument benefit of $100. The certificate provided that it was subject to the application for membership, the articles of incorporation, constitution and laws of the society, and all amendments thereto. This contract contained no nonforfeiture provisions, such as extended or paid-up insurance, or cash-surrender value. The insured paid the monthly premium rate of $1.35, provided by defendant's laws, until 1917, when, by a change in the laws of the society, this rate was increased ten cents per month. In 1919 the laws of the society were again changed so as to increase the rate to $2.94 per month. However, the insured had the option of continuing his former rate of payment and have a lien charge of $150, with interest at five per cent compounded annually, placed against his certificate. This was in accordance with the plan of apportionment and readjustment. The insured elected to pay the former rate, and lapsed his monument benefit, as he was permitted to do, which made his rate $1.40 per month. The rate charged prior to 1919 was insufficient to enable the society to provide the benefits promised in its certificates. The change made in the rate in 1919 provided such income that the society in a few years found itself in excess of one hundred per cent solvent from an actuarial viewpoint, and in the class of members to which Mr. Benjamin belonged a gross surplus accumulated by April 30, 1929. Mr. Benjamin and practically all the members of his group applied for and were given new certificates in exchange for their old ones. This certificate contained nonforfeiture provisions after three years. Mr. Benjamin was then fifty-six years of age, and the rate on the

new certificate for a new member of that age was $4.56 per month, but because Mr. Benjamin and other members of his class had an aggregate accumulation in the surplus of the society sufficient to do so the new certificate was issued as of a prior date. The application, made July 8, 1929, for the certificate contained these provisions:

"The new certificate is to become effective on the first day of July, 1929, and to bear the date of July 1, 1925, and age of 52.

"It is understood and agreed that withdrawal values, if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from the date thereof.

"First payment on new certificate is for the month of July, and I warrant that all the required payments on my present certificate have been paid up to the first of the month for which said first payment is made."

The certificate issued on that application contained this provision:

"The nonforfeiture values shall be computed as if this certificate had been issued on the 1st day of July, 1925. Issued at Omaha, Neb., this 29th day of July, 1929."

And was accepted by the insured August 5, 1929. The certificate contained these provisions:

"After thirty-six monthly payments on this certificate shall have been made, . . . the member, within three months after . . . default, upon written application and legal surrender of the certificate, may select . . . the cash-surrender value, . . . or the paid-up certificate, . . . or the extended insurance.

"3. Automatic premium loan: After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payment be not paid on or before its due date, and if the member has not prior to such due date selected one of the options available under the nonforfeiture provisions of this certificate, the association will, without any action on the part of the member, advance, as a loan, to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the association, equal the cash value hereof at the date of default in the payment of the monthly payments. When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void; provided, that while this certificate is continued in force under this provision, the member may resume the payment of monthly payments without furnishing evidence of insurability, and the accumulated loans and interest thereon shall become a lien upon this certificate and shall continue to bear interest at the same rate. Provided further, that such lien may be paid in whole or in part at any time by the member, but if not paid said loan and accumulated interest thereon shall be deducted upon any settle-

ment with the, member, or from the amount payable at the death of the member.

. . . . . . . . . . . . . . . .

"The cash, loan, paid-up and extended insurance values shall not·become available until three years from the date of issue, as set forth on page 1 hereof.

"The articles of incorporation, the constitution, laws and by-laws of the association now in force, and all amendments to each thereof which may be made hereafter, the original application for membership, including the medical examination signed by the member, the application for exchange of certificates, and this certificate, shall constitute the agreement between the association and the member; and copies of the same certified to by the sovereign clerk shall be received in evidence as proof of the terms and conditions thereof."

The certificate set forth a table of nonforfeiture values from the end of the third certificate year to the twentieth. The monthly rate on the certificate was $3.74, and the annual rate $43.10. The laws of the society provide that on the failure to pay the monthly assessment on or before the last day of the month in which it is due the member becomes suspended and his benefit certificate is void. Both benefit certificates, the applications for them, the articles of incorporation and laws of the society at the time Benjamin became a member, and the changes made since that date, were all introduced in evidence. There was testimony that the new certificates were issued as of the dates prior to their actual date of issue, in so far as the determination of the nonforfeiture and other values contained in the new certificates were concerned, to give Mr. Benjamin, as an individual of the group to which he belonged, by the transfer to the new form of certificate, a contract on which the nonforfeiture values covering a period of four years had accrued at the date of the issuance of the new certificate. The society had statutory authority to so use its accumulated surplus. (R. S. 40-723; R. S. 1933 Supp. 40-705.)

The insured paid the monthly assessments on the new certificate from July 1, 1929, to and including March, 1932, with the exception that the society advanced to him $22.44, representing monthly premiums from May to October, 1930, which sum was admitted to be a lien against the certificate. The insured died November 2, 1932, without having made any request for nonforfeiture benefit. Plaintiff, as the beneficiary named in the certificate, asked the society for payment of the amount thereof, less the lien thereon. The society rejected the claim because of the insured's failure to pay the April, 1932, and subsequent assessments. This action followed, with the result above stated.

It will be noted that the insured did not pay the $3.74 monthly dues for three full years after the last certificate actually was issued to him. Appellant contends he had to do so before the nonforfeiture provisions of the certificate came into effect. This contention gives no force to the provision of the certificate, "The nonforfeiture values shall be computed as if this certificate had been issued on the first day of July, 1925." As we have seen, the evidence disclosed that the insured had an undistributed interest or share in the accumulated surplus or reserve of the society, in excess of its one hundred per cent solvency, sufficient to authorize and justify the society in issuing this new certificate containing the provision last above quoted. It is conceded that if the nonforfeiture values were to be computed as if the certificate had been issued on July 1, 1925, that the certificate was in force at the time of the death of the insured. We see no other purpose in placing that provision in the certificate. The result is, the certificate was in force at the time of the death of the insured. This accords with the decisions of other courts which have passed upon the identical question. (*Daly v. Sovereign Camp W. O. W.*, 226 Mo. App. 629, 44 S. W. 2d 229; 55 S. W. 2d 743; *Sovereign Camp Woodmen of the World v. Hardee*, 188 Ark. 542, 66 S. W. 2d 648; *Sovereign Camp W. O. W. v. Easley*, 188 Ark. 1012, 69 S. W. 2d 273; *Higgins v. Sovereign Camp W. O. W.*, 224 Ala. 644, 141 So. 562; *Sovereign Camp W. O. W. v. Batty*, 227 Ala. 50, 148 So. 811; *Sovereign Camp W. O. W. v. Harder*, 227 Ala. 700, 150 So. 921; *Dudley v. Woodmen of the World*, 205 N. C. 394, 171 S. E. 352; *Jones v. Sovereign Camp, W. O. W.*, [Tenn.] 67 S. W. 2d 159; *German Beneficial Union v. Weinfurtner*, 128 Oh. St. 173, 190 N. E. 397.)

Appellant complains that the trial court excluded evidence offered in the form of depositions. By the evidence excluded the witnesses had undertaken to construe some parts of the certificates, the applications and the articles of incorporation and laws of the society, and to give their version of what the various provisions meant. All of these instruments were in writing and were in evidence. Their construction was a function of the court, not of the witnesses.

Case No. 31,731 is an action upon another fraternal benefit certificate issued by the same defendant. The facts as to the date of the issue of the first certificate, the age of the insured, his rate of

payment, and, perhaps, in a few other matters, differ from those in case No. 31,730, but the legal questions involved are the same. Judgments in both cases are affirmed.