### SOVEREIGN CAMP, W. O. W., v. McANULTY et al.

#### No. 3826.

Court of Civil Appeals of Texas. El Paso.

May 25, 1939.

O. H. Atchley, of Texarkana, for appellant.

O. B. Pirkey, of New Boston, for appellees.

WALTHALL, Justice.

There is no controversy on the facts of this case, and appellees concur in the statement made by appellant in its brief, which is substantially as follows:

This suit was instituted by Mrs. Stella McAnulty, surviving widow of James W. McAnulty, deceased, individually and as next friend of James T. McAnulty, a minor son of plaintiff and deceased, to recover on an insurance policy issued by appellant to the deceased. The case was tried to a jury, and upon the verdict and undisputed facts, judgment was rendered for plaintiffs for the face value of the policy and $250 attorney's fee and twelve per cent penalty, less some premiums deducted as credits. Appellant timely filed motion for new trial, and, said motion being overruled, filed its appeal bond and perfected its appeal.

Appellant is a fraternal benefit association as that term is generally understood and as defined by Texas Statutes, Chap. 8, Title 78, Revised Civil Statutes of Texas, 1925 and amendments thereto; Vernon's Ann.Civ.St. Arts. 4820 to 4843. On the 25th day of May, 1905, appellant issued to James W. McAnulty, hereinafter called insured, its beneficiary certificate in the sum of $1,-000. Insured kept the premiums paid on this certificate until January, 1930, when what is termed an Ordinary Whole Life Certificate for $1,000 was issued by appellant to insured in lieu of the old certificate, and the old certificate cancelled and all rights thereunder released. The new certificate was issued upon the strength of a written application of insured to appellant to exchange his old for the new certificate. This application, among other things, provided as follows:

"The new certificate is to become effective on the first day of February, 1930, and to bear the date of February, 1927 and age 48.

"It is understood and agreed that withdrawal values, if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from date thereof.

"First payment on new certificate is for the month of Feb. 1930."

The rate on the new certificate was $3.10 per month, and insured paid only thirty-five monthly payments on the new certificate of $3.10 each.

Insured became or at least was by appellant suspended about February 1, 1933, for non-payment of premiums.

The Constitution and By-Laws of appellant association provided for such suspension for non-payment of such premiums.

The Ordinary Whole Life Certificate sued upon promised to pay $1,000 to the beneficiaries upon the death of insured while in good standing; or pay the cash surrender value according to the table of values; or advance automatic premium loans; or grant paid-up or extended insurance.

The policy contained the following provision:

"The non-forfeiture values shall be computed as if this certificate had been issued on the 1st day of Feb. 1927.

"Issued at Omaha, Nebraska, this 17th day of Feb. 1930."

The policy contained the following special provisions:

"2. Cash surrender, loan value, paid-up and extended insurance: After thirty-six monthly payments on this certificate shall have been made, should the member fail to pay any subsequent monthly payment, the member, within three months after due date of the monthly payment in default, but not later, upon written application and legal surrender of this certificate, may select one of the following non-forfeiture options:

"Option (a). The Cash Surrender Value set forth in Column 1 of Table A. on page 3 hereof for the period to the end of which premiums have been paid in full.

"Option (b). A paid-up certificate for the amount set forth in Column 2 of Table A on page 3 hereof for the period to the end of which premiums have been paid in full.

"Option (c). Extended Insurance from such due date for the amount of the death benefit on page 1 hereof, but without Total and Permanent Disability Benefits, for the period specified in Column 3 of Table A on page 3 hereof for the period to the end of which premiums have been paid in full.

"If there be any indebtedness against this certificate, the cash surrender value set forth in Column 1 of Table A on page 3 hereof shall be reduced thereby, and the value of the options above named shall be decreased proportionately.

"3. Automatic premium loan: After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payments be not paid on or before its due date, and if the member has not, prior to such due date, selected one of the options available under the Non-forfeiture provisions of this certificate, the Association

will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the Association, equal the cash value hereof at the date of default in the payment of the monthly payments. When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void; provided, that while this certificate is continued in force under this provision, the member may resume the payment of monthly payments without furnishing evidence of insurability, and the accumulated loans and interest thereon shall become a lien upon this certificate and shall continue to bear interest at the same rate. Provided further, that such lien may be paid in whole or in part at any time by the member, but if not paid said loan and accumulated interest thereon shall be deducted upon any settlement with the member, or from the amount payable at the death of the member."

The last sentence of the last paragraph 2 of said certificate reads as follows: "The cash, loan, paid-up and extended insurance values shall not become available until three years from the date of issue, as set forth on page 1 hereof."

The table of values referred to in the policy is set forth on page 11 of the statement of facts, to which we here refer instead of copying here, on account of its length.

Appellant defended appellees' suit on the ground that the certificate sued upon had lapsed for non-payment of the premiums from December, 1932, until insured's death and the member therefore suspended; also pleaded their Constitution and By-Laws providing in effect that failure to pay such premiums as and when due would make the certificate null, void and of no effect; also pleaded the provisions of the written application of insured to exchange the old for the new Ordinary Whole Life Certificate.

On the trial of the case the appellant contended that because of the failure to pay the premiums as and when due the membership lapsed and the certificate forfeited; the appellees contended that because of the provisions of the Automatic Premium Loan the policy was kept in force without the payment of such premiums. In answer to this contention, appellant contended that this automatic premium loan provision never became available because insured did not pay thirty-six monthly premiums on the new certificate as required by the very terms making this specific grant. That the insured did not pay thirty-six monthly premiums on the new certificate is agreed by stipulation on the trial. In answer to appellant's contention, appellees contended that the provision of the policy, "The nonforfeiture values shall be computed as if this certificate had been issued on the 1st day of Feb. 1927," dispensed with the necessity of paying thirty-six monthly premiums thereon, claiming that the computation of the thirty-six months mentioned in this loan clause began as of February 1, 1927, and that the premiums, by virtue of said clause, should be considered as having been paid during the period of February 1, 1927 until the insured actually discontinued payment of premiums thereon.

### Opinion.

In economy of time and space and in view of the fact that this case is identical in the facts and the issues presented and decided, in legal effect, as in Sovereign Camp W. O. W. v. Mrs. Ellen Carroll, Tex.Com. App., 110 S.W.2d 556, we think we need not discuss this case at much length.

In the above case cited it is held that under the new certificate of life insurance, issued in January, 1930, in consideration of surrender by the insured of all benefits under the old certificate, and containing special provision that non-forfeiture values should be computed as if new certificate had been issued in January, 1927, and providing for automatic premium loan after thirty-six monthly payments shall have been paid, thirty-six months' payments are required to be made after issuance of the new certificate in order to render special provision effective.

In Sovereign Camp W. O. W. v. Moraida, 113 S.W.2d 177, the Commission of Appeals refers with approval to the above Carroll case, and to the case of Sovereign Camp W. O. W. v. Alston, 82 S.W.2d 710, 712, writ refused.

In the above Alston case the Waco Court of Civil Appeals, speaking through Judge Alexander, after referring to paragraph 3, Automatic Premium Loan, by which the policy was to be kept alive, said: "By specific

and unmistakeable language the benefits provided for in paragraph 3 were made available to the certificate holder only 'after 36 monthly payments on this certificate shall have been paid.' By the term 'this certificate,' as used in the foregoing sentence, is meant this particular written agreement. Language could hardly be clearer. With this provision standing alone, no one could be misled into the belief that he would have the right to depend on the automatic premium loan provided for therein to keep his policy alive unless and until he had made at least thirty-six monthly payments on the very certificate under which he was claiming. It is inconceivable that a holder of such a certificate [a new certificate termed an "Ordinary Whole Life Certificate"] should believe that he would have the right to have considered for this purpose payments theretofore made by him on another and prior certificate."

Appellee proved that at the time of the issuance of the new certificate upon which the suit was brought, the insured was the holder of a certificate of insurance in the Woodmen of the World and that under that old certificate the beneficiary had an accumulative reserve with appellant in February, 1930, of $822.04, and suggests such reserve as a basis for granting the privileges provided in the new certificate, one of which was, "the non-forfeiture values shall be computed as if this certificate had been issued on the first day of February, 1927," and another of which was to give to the insured the benefit of the reserve in non-forfeiture values to reach back and date from February 1, 1927, the new certificate providing: "The new certificate is to become effective on the first day of Feb. 1930, and to bear date of Feb. 1927, and age of 48."

However, the application for the exchange of the old certificate for the new has this provision: "It is understood and agreed that withdrawal values, if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from date hereof."

In the application for the new certificate the insured further stated: "I hereby warrant that my certificate (the old one) has been lost or destroyed * * * and as a condition precedent to the approval of the within application for exchange, I waive all rights and benefits which I or my beneficiaries may have heretofore acquired or may now have under said certificate, and I hereby cancel the same and agree to forward said certificate to the office of Sovereign Camp of the Woodmen of the World if it should come into my possession."

The above waiver was signed by the insured and witness on January 29, 1930.

As said by the Court in the Alston case, supra, the provision in the exchange of the old for new certificate (copied above) "excludes the idea that any payments made on the old certificate prior to February 1, 1930 (the date here), should be considered in determining whether or not the insured had made a sufficient number of payments to entitle him to the benefit of the withdrawal values for the purpose of keeping his certificate alive, and renders it clear that in determining whether or not the insured had made payments on the new certificate for three full years, the first payment to be counted should be the one made in February, 1930," (this case).

The judgment of the trial court is reversed and here rendered denying plaintiff any recovery herein.